IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

VICTORIA G. RABENSTINE,

      Plaintiff,

v.                                     Civil Action No. 4:14cv78

NATIONAL ASSOCIATION OF STATE
BOATING LAW ADMINISTRATORS, INC., et al.,

      Defendants.

## OPINION & ORDER

This matter is before the Court pursuant to Plaintiff Victoria Rabenstien's ("Plaintiff" or "Rabenstine") Motion to Reconsider Order Dismissing James Hagan as a Party Defendant ("Motion"). Doc. 40. For reasons Plaintiff failed to raise in her Response in Opposition to the Motion for Summary Judgment, Doc. 28, she requests the Court reconsider its Opinion and Order granting Summary Judgment on behalf of Defendant Hagan ("Defendant" or "Hagan") due to his relationship with Defendant National Association of State Boating Law Administrators, Inc. ("NASBLA"). Docs. 40, 41. For the reasons set forth herein, Plaintiff's Motion is **DENIED**.

### I. BACKGROUND

**A. Factual Allegations**

This is a personal injury action arising out of a boating accident brought "under the general maritime and tort laws of the United States as well as any other applicable law of the Commonwealth of Virginia." Compl. ¶ 1. Defendants removed the action to the United States District Court for the Eastern District of Virginia on June 27, 2014, and the Court's admiralty

jurisdiction has been invoked. Doc. 1. There are three Defendants in this action: Defendant NASBLA; Defendant Hagan; and Defendant State of Louisiana, through the Department of Wildlife & Fisheries ("LDWF"), ("Louisiana"). Id. ¶¶ 3-4. Rabenstine was a student in a "Tactical Operator's Course" in which Defendant Hagan was an instructor. Id. ¶¶ 6-8. Defendant Hagan is alleged to be an agent or servant of both Defendants NASBLA and Louisiana. Id. ¶ 8.

Rabenstine was injured in a boating accident on May 21, 2012, which she alleges was caused by Defendants' joint negligence. Id. ¶ 9. The accident occurred on the James River near Craney Island when a student in the Tactical Operator's Course at which Plaintiff was present performed a ninety degree starboard turn called a "Gate Drill." Id. During this drill, the vessel suddenly shifted to the port side and threw Plaintiff about the deck of the vessel, causing injury. Id. ¶¶ 7, 9. Rabenstine alleges that at the time of the accident the vessel was under Defendant Hagan's care and control and that he was negligent in his instruction of the student operator. Doc. 29 at 2.

B. Procedural History

On May 8, 2015, Defendant Hagan filed a Motion for Summary Judgment, Doc. 24, contending that as an employee of the State of Louisiana, he enjoyed qualified immunity from the present litigation. Doc. 25. In determining whether to grant summary judgment, it was not disputed that Hagan was acting within the scope of his employment with Louisiana at the time of the accident. Docs. 29 at 6; 41 at 7. Finding that Hagan was entitled to qualified immunity, the Court granted summary judgment on his behalf on June 1, 2015. Doc. 38. On June 4, 2015, Plaintiff filed the present Motion arguing that in granting summary judgment on qualified immunity grounds the Court failed to consider the issue of Defendant's "duel employment" with

both Louisiana and NASBLA. Doc. 41 at 1. Plaintiff has cited no law in support of her contentions, and she has not replied to the arguments posited by Defendant Hagan in opposition to the present Motion.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 59(e) allows the Court "to alter or amend a judgment" if a motion is filed within twenty-eight (28) days after entry. Fed. R. Civ. P. 59(e). In order to alter a judgment, the moving party must show "either (1) an intervening change in the controlling law, (2) new evidence that was not available at trial, or (3) that there has been a clear error of law or a manifest injustice." Robinson v. Wix Filtration Corp. LLC, 599 F.3d 403, 407 (4th Cir. 2010). Mere disagreement as to how legal standards are applied will not support a motion under Rule 59(e). See United States ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2000) (quoting Hutchinson v. Stanton, 994 F.2d 1076, 1082 (4th Cir. 1993)). Further, Rule 59(e) "provides for an extraordinary remedy that should not be awarded except under exceptional circumstances." Mayfiled v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 378 (4th Cir. 2012).

## III. ANALYSIS

Plaintiff has failed to allege on which ground she is seeking alteration of the Court's judgment. Plaintiff cites no intervening change in the controlling law, nor has Plaintiff alleged there is new evidence before the Court. Plaintiff seemingly implies that the Court made an error of law in dismissing Defendant Hagan on summary judgment for the following reasons. Firstly, Plaintiff claims the Court should reconsider its decision dismissing Hagan from the case because there is "an issue of fact as to the liability of NASBLA through Hagan, a necessary defendant party." Doc. 41 at 8. Secondly, Plaintiff argues that "Hagan never contended in his motion for

summary judgment that his qualified immunity extended to his 'relationship' with NASBLA," but concedes that "Hagan was clearly serving two masters on May 21, 2012." Id. at 5, 7. She states, "[f]or one master, the State of Louisiana, he [Hagan] has qualified immunity, a contention the plaintiff does not contest in this motion." Id. at 5, 7. Lastly, Plaintiff argues that in the Court's Opinion and Order it "never reached the contention of the State of Louisiana that Hagan was entitled to qualified immunity if he reasonably understood that he was acting within the boundaries of his discretionary authority under State law." Id. at 4. The Court will address each contention in turn.

### A. Official Capacity & Liability of NASBLA

Typically, "[b]efore permitting an official to claim qualified immunity a court must determine that the official's acts were not clearly established to be beyond the scope of his authority." In re Allen, 106 F.3d at 594. If a defendant's conduct "'falls within the scope of the defendant's duties'" as a public official, "a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." In re Allen, 106 F.3d 582, 594 (4th Cir. 1997) (quoting Shechter v. Comptroller of New York, 79 F.3d 265, 268 (2d Cir. 1996)). This standard, as set forth in Allen, was prefaced by a factual dispute as to the outer bounds of a government official's discretionary duties. Id. at 590. In fact, the Fourth Circuit stated that "plaintiffs rarely assert that the defendant officials were not 'acting pursuant to their job function and within the scope of their authority.'" Id. at 594 (quoting Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994)). Indeed, this Court did not conduct an extended analysis of Defendant's official duties because Plaintiff did not assert the claim that Hagan acted outside their bounds.

In this Circuit, a defendant claiming qualified immunity "bears the burden of

demonstrating that the conduct of which the plaintiff complains 'falls within the scope of the defendant's duties.'" Id. (quoting Shechter, 79 F.3d at 268). Plaintiff, Defendant Hagan, and Defendant Louisiana all admitted that Defendant Hagan was acting within the bounds of his "official capacity" at the time of the accident. See Docs. 29 at 6; 30 at 6. Pursuant to Local Rule 56(B),[1] the Court concluded that Defendant Hagan had met his burden of proof as to official capacity by virtue of the party admissions. Doc. 38 at 5. Further, in response to Defendant Hagan's Motion for Summary Judgment, Defendant Louisiana submitted a copy of Defendant Hagan's "Position Description," which provided that the scope of Hagan's authority as a Wildlife Enforcement Sergeant includes patrolling public and private waters, training field personal of lesser rank, and attending required trainings as mandated by the LDWF. Doc. 30, Ex. 1 at 2–3. The act complained of in the present matter, ordinary negligence in instructing a tactical boat operations course, falls well within the perimeter of Defendant Hagan's official duties, and he would have understood himself to be acting within those boundaries at the time of the accident.

Stemming from this conclusion, Plaintiff argues in her Motion that there is still "an issue of fact as to the liability of NASBLA through Hagan," which the Court's ruling on scope of employment interferes with. Doc. 41 at 8. It should be noted, therefore, that a finding that Hagan was acting within the scope of his official duties for qualified immunity purposes does not constitute a finding that Hagan was acting subject to the control of either Defendants Louisiana or NASBLA for purposes of respondeat superior. This issue is not properly before the Court, and the Court declines to address Plaintiff's contentions in so far as they relate to such claims. It is enough to say that the Court need not reach a conclusion as to indicia of control in order to

---

[1] Local Rule 56(B) states that "[e]ach brief in support of a motion for summary judgment shall include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue . . . . In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."

find that Defendant Hagan was entitled to qualified immunity.

## B. Qualified Immunity as a Servant of Two Masters

Qualified immunity is immunity from civil liability enjoyed by government officials performing discretionary functions provided their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wheeler v. Gilmore, 998 F. Supp. 666, 669 (E.D. Va. 1998) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Few courts have addressed the contention that an employee who is otherwise entitled to qualified immunity by virtue of his status as a public official could forfeit his immunity by nature of his simultaneous employment with a non-qualifying entity. The United States Court of Appeals for the Ninth Circuit was faced with a situation in which a military doctor, acting within the scope of his employment with the United States, was working concurrently for a private children's hospital at the time the alleged negligence occurred. Ward v. Gordon, 999 F.2d 1399, 1404 (9th Cir. 1993). The Ninth Circuit reasoned that because the doctor was acting within the scope of his government employment at the time of the incident, he was immune from suit even though he was simultaneously acting as servant of a non-governmental entity.[2] Id.

In conformance with this reasoning, the United States Court of Appeals for the Sixth Circuit held that when an employee's activity "serves a dual purpose" he can still be considered within the scope of his government employment for immunity purposes. Carpenter v. Laxton, 96 F.3d 1448 (6th Cir. 1996); see also Palmer v. Flaggman, 93 F.3d 196, 205 (5th Cir. 1996) (holding that in order to obtain immunity under federal law, a government employee under the

---

[2] Although Ward arose under the Medical Malpractice Immunity Act, 10 U.S.C. § 1089 (1998), the Ninth Circuit's reasoning is clear. Even if a public employee is acting as a private entity's "borrowed servant," this does not disqualify him from immunity provided he was also acting within the scope of his government employment at the time. 999 F.2d at 1401–04.

control of a non-governmental employer was "only required to show that his actions were appropriately within the scope of his federal employment."). The Fourth Circuit has not addressed this issue directly, but requires a defendant seeking qualified immunity to have been acting within the scope of his or her official capacity at the time of injury. See Leverett v. Bell, 247 F.3d 160, 164 (4th Cir. 2001). According to the Second Restatement of Agency, "[a] person may be the servant of two masters, not joint employers, at one time as to one act, if the service to one does not involve abandonment of the service to the other."[3] Restatement (Second) of Agency § 226 (1958).

Around April 18, 2012, Hagan's superior at LDWF "authorized him to attend additional training to become certified as an instructor in NASBLA's tactical boat operator program . . . so that he could provide training to law enforcement officers at the LDWF. . . ." Doc. 30 at 2. Hagan was directed to enter the time spent instructing the tactical boating course on his Louisiana timecard, and was paid by the State for attending the training. Doc. 25 at 2. It is not disputed that, for qualified immunity purposes, at the time of the accident Hagan was simultaneously the servant of two masters, Defendant Louisianan, through the LDWF, and Defendant NASBLA. Hagan's service as an instructor for NASBLA did not require the abandonment of his service to Louisiana. In fact, his service was mutually beneficial to both entities. Defendant NASBLA received assistance in instructing trainees in its Tactical Operation's Course, and Defendant Louisiana received employee training valuable to the continued mission of the LDWF. According, the Court **FINDS** that as Defendant Hagan was acting within the scope of his public employment at the time of the accident, he does not forfeit his qualified immunity by virtue of his simultaneous employment with Defendant NASBLA.

---

[3] Both federal and the majority of state courts have adopted this reasoning. See Restatement (Second) of Agency § 226 cmt. b (1958).

## IV. CONCLUSION

For the reasons set forth herein, Plaintiff has not shown that there has been clear error of law in granting summary judgment on behalf of Defendant Hagan. Accordingly, Plaintiff's Motion, Doc. 40, is **DENIED**.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia

June 26, 2015